## Stratton & Terstegge Co. v. Meriwether.

(Decided October 31, 1912.)

### Appeal from Jefferson Circuit Court (Chancery, First Division).

1. **Municipal Corporations—Streets and Sidewalks—Use of.**—One is entitled to the reasonable use of the streets and sidewalks of a municipality. In so using them as to bar public travel, he invades the right not only of the general public but of the abutting property holder in particular.

2. **Municipal Corporations—Streets and Sidewalks—Abutting Lot Owners—Injunction.**—An abutting lot owner whose easement of access has been interfered with may, if he applies therefor within a reasonable time after such interference, have injunctive relief to prevent same.

3. **Municipal Corporations—Streets and Sidewalks—Nuisance—Equity.**—Neither permanent platforms erected on the sidewalk of a public street, used in loading and unloading freight on and from cars stored on a switch, laid under municipal authority and its construction and use acquiesced in by abutting lot owners for a long period of time, nor a draw bridge across and near the surface of the street, are a part of or necessary to the reasonable use of said switch; nor are the platforms a renewal or continuation of a nuisance, theretofore existing and acquiesced in, viz.: platforms of smaller dimensions, used for same purpose, not so

effectually closing the street to public travel, and removed about three months before the erection of others to displace them. Equity will, therefore, upon seasonable application, compel their removal.

4.   Same—Laches.—The intermittent storing of goods in the process of manufacture, in a public street, so as to interfere with public travel, is not a continuous nuisance, and laches in respect thereto cannot successfully be interposed as a defense to a suit in equity to compel its discontinuance.

GIBSON, MARSHALL & CRAWFORD for appellant.

ELMER C. UNDERWOOD for appellee.

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

Lewis Meriwether, the owner of a lot on Crop alley in the city of Louisville, Ky., on June 26, 1911, brought suit in the Jefferson Circuit Court against Stratton & Terstegge Co., seeking to enjoin it from interfering with his easement of access to his premises on said alley, and to recover from it $3,000 damages for such interference. Crop alley is a public street, thirty feet wide, in the city of Louisville between Main and Rowan streets, and opening into Fifteenth street on the east, and into Sixteenth street on the west. Plaintiff's lot extends a width of thirty feet from Rowan street to Crop alley, and has on the Rowan street frontage, a dwelling, and on the Crop alley frontage, a brick cottage. Defendant owns all the property on both sides of Crop alley, from the east line of plaintiff's lot, when extended to Main street, east to Fifteenth street. Plaintiff, after one or two personal inspections, bought his lot at commissioner's sale on July 11, 1910, and received deed therefor July 21, 1910. Defendant acquired its property by deed dated June 25, 1910, and has ever since devoted it to manufacturing purposes. Crop alley, from plaintiff's lot to Sixteenth street, is free from obstruction. In 1882, under municipal authority, a switch track was laid in Crop alley, from a point about six feet east of the east line of plaintiff's lot, and within seventeen inches of the north sidewalk, eastwardly to a point beyond Fifteenth street. For more than thirty years prior to defendant's acquisition of this property, B. F. Avery & Sons, its immediate grantors, used it as a plow factory. In 1867 and 1870, they built overhead bridges

connecting the buildings on each side of the alley, but these in no way interfere with the traffic upon the alley. They continuously used the switch for storing freight cars, and for unloading and loading. Goods in process of manufacture were stored in the alley to such an extent as at times to completely bar traffic, except by pedestrians. For at least five or ten years before they disposed of their property, they erected and established permanent structures upon the sidewalks, to facilitate the loading and unloading of freight from the cars and for the storage of material. These were removed when they surrendered the premises in July, 1910, but in October of that year defendant erected permanent structures on the sidewalks, changed as to form so as to meet the requirements of their own business. There was also a draw bridge at the Fifteenth street end of the alley, about four feet from the ground. The defendant, in its answer denied the material allegations of the petition, and in a second paragraph pleaded that its predecessor in title had so used the street, for a period of more than twenty years, as to block it against traffic, and that such use had been acquiesced in by plaintiff's grantors, and that plaintiff was not entitled to the relief sought. Proof was taken upon both sides, and upon submission the chancellor was of opinion that plaintiff was entitled, in part, to the relief sought. He, therefore, entered a judgment ordering the removal of the three platforms built upon the sidewalk, and the drawbridge, and enjoined the defendant from, in any way or manner, using Crop street so as to interfere with the free use of the carriage way to the public, either on foot or by vehicles; also, from so using either sidewalk as not to admit of full and free passage of pedestrians; and transferred the common law issue of damages to the law docket. The defendant appeals.

In brief, counsel for appellant confine themselves, in argument, to one point, upon which they rest their right to a reversal, viz.: That, inasmuch as the street in question was, under municipal grant, obstructed many years before appellee acquired title to his property, and such obstruction was acquiesced in by appellee's predecessor in title, he cannot now successfully maintain an action for injunctive relief; but, if he has any cause of action, it is a suit for damages. As supporting this, they cite and rely on Ferguson v. Covington, &c., Bridge Co., 108

Ky., 662. In that case the plaintiff alleged that the
bridge company had so laid its track in Washington
street, in the city of Covington, as to prevent the use of
the street for the purpose of ingress and egress to and
from his property by ordinary vehicles; that said use
amounted to a nuisance, both public and private; and
sought to have the bridge company enjoined from using
all of the street, and from so using and occupying so
much of it as was necessary for the passage or ordinary
vehicles upon and over it. The bridge company an-
swered, and in addition to the plea of limitation, alleged
that the tracks on this street had been laid many years
before and just as they were at the time the suit was in-
stituted, and in fact long before plaintiff acquired title
to his property; that plaintiff bought his property with
a knowledge of the presence of these tracks in the street
and of the use to which they were being put; and further
pleas and defenses were made and interposed, which are
unnecessary to notice here. Upon final submission the
chancellor dismissed the petition, and the plaintiff ap-
pealed. The judment of the lower court was affirmed
upon two grounds, the second of which, it is insisted, is
directly in point. There the court said:

"There is another ground upon which the relief
sought in this proceeding must be refused. We do not
undertake to decide here upon the proposition earnestly
urged by counsel for appellee, that, 'where a railroad is
authorized by the terms of its charter to construct a
road in a particular manner, or through a particular
street, such construction, being authorized by law, is not
a nuisance and will not be enjoined.' But the acquies-
cence of appellants' grantors for so long a time in the
situation and operation of the tracks as they are now sit-
uated and used seems to us to have deprived them of the
right to seek equitable relief. 'Where a property
owner seeks to enjoin a railway company from using its
tracks upon a street in front of his premises, has per-
mitted the company to expend large sums of money in
the construction of its tracks, and has acqupiesced in
their use for a considerable number of years without ob-
jection or complaint, such acquiescence will deprive him
of relief by injunction, regardless of what his original
equities may have been.' High, Inj., section 618, citing
Railroad Co. v. Strauss, 37 Md., 237. And in Reichert
v. Railroad Co. (Ark.), 11 S. W., 696: 'Where abutting

lot owners, who own the fee of a street, stand by during a period of three years after authority has been granted to a railroad company to construct its track in the same, they will be deemed to have acquiesced in the use of the street for railroad purposes, and will be estopped thereby from maintaining an action of ejectment.' In Porter v. Railway Co., 125 Ind., 476 (25 N. E., 556), it was said: 'An abutting owner may maintain an action for damages against a railroad which wrongfully builds its tracks in a street. But, when he stands by without objecting until the rights of the public and third parties have intervened, he cannot maintain either ejectment or injunction.' This court has applied the same doctrine to cases of actual taking of the citizen's land with his knowledge and acquiescence. In Halbert v. Railroad Co., 98 Ky., 663 (33 S. W., 1121), in an opinion by the present Chief Justice, it is said: 'Where an owner who has never received compensation for the use of his land acquiesces in the construction of a railway over it, he is estopped from recovering the land, but may recover damages.' The same doctrine has been applied to a married woman in Railway Co. v. Stephens, 96 Ky., 401 (29 S. W., 14). It is unnecessary to multiply authorities upon this proposition.

"Whether the injury to appellant's property in this case is of such character as would entitle them to equitable relief upon application made in due time, or whether it is a 'matter of mere damage, for which the law affords adequate remedy,' within the rule stated in Fulton v. Transfer Co., 85 Ky., 653 (4 S. W., 332), is not decided."

The opinion, from which we have quoted, is decisive of the single question, to-wit: The appellee, and his predecessor in title, having permitted the building of this switch in question and having taken no steps to enjoin appellant, or its predecessor in title, from thus subjecting this street to a reasonable use for such purpose, may not now, after the lapse of many years, successfully maintain a suit for injunctive relief. This is the extent to which the principle announced in the Ferguson case supra, may be applied. In his judgment, the chancellor did not require appellant to remove the switch in question; nor did he enjoin its reasonable use. The relief granted only went to the extent of requiring appellant to remove from the street, the platforms and the draw

bridge. These obstructions had been placed in the street by appellant to enable it more conveniently to load and unload its goods and merchandise on to and from the cars on this switch. They were not a part of the switch, or at all necessary to its reasonable use, but were constructed solely for the purpose of enabling appellant to load and unload its goods more expeditiously, and probably with less expense. It is not entirely clear from the record when this draw bridge was constructed. Appellant's predecessor in title had constructed some character of platform in this alley, but it was removed when they surrendered possession to appellant, who proceeded, under municipal authority, to erect larger, longer, and more commodious, platforms; and they, together with the draw bridge at the far end of the street had the effect to close completely this street to public travel. It appears that as soon as appellee learned these improvements had been made, he demanded of appellant that it remove these obstructions from the street, so that it would be open for the passage of vehicles and pedestrians. This notice was given, and in a seasonable time thereafter this litigation was begun. It is not claimed for appellant, that the authority obtained from the city, under which these improvements were made, relieves it from liability for any damage which he may have sustained by reason of the obstruction of the street, but, it is most earnestly urged that, inasmuch as appellee delayed bringing his suit for injunctive relief until they had expended their money in making these improvements, he must look to his action for damages. The correctness of this position depends entirely upon whether or not appellee's delay in bringing his suit, can be regarded as an unreasonable length of time; for certainly, after an obstruction is placed in the street and one suffers an injury peculiar to himself on account thereof, he is entitled to injunctive relief, and he has a reasonable time within which to apply therefor. Appellant obtained the permit from the city authorities to make these improvements on October 10, 1910; they were completed during that month; the notice, which appellee gave appellant advising that he objected to these obstructions being placed in the street, was given November 27, 1910; and the suit was instituted June 26, 1911. It is insisted for appellee that this was sea-

sonable action on his part. In High on Injunctions, section 786, we find the following:

"He who seeks relief against a nuisance must show due diligence in the assertion of his rights; and where complainant has been guilty of great laches, or has allowed defendant for a long period to continue in the erection of his obnoxious structure, at great expense and without molestation, equity will not interfere. Even when the cause of complaint has been temporarily removed and is about to be renewed, complainants, who have long slept on their rights will not be allowed to enjoin it as a renewal of the nuisance, and thus put themselves in the position from which their own laches has debarred them. It is difficult to fix any precise period of delay as fatal to complainant's right to relief against the nuisance, but where defendant has for more than twenty years carried on his trade without molestation, and proves a good prima facie title by prescription, equity will not interfere, but will leave the parties to seek their remedy by law. And it has frequently been decided that where the works complained of had been allowed to stand three years and upward, it was such laches as would prevent relief in equity. But it is held that no acquiescence short of twenty years adverse user will bar plaintiff from his right to relief by injunction against a nuisance, unless he is estopped by some act or conduct which has induced defendant to incur expense, or to take action upon the strength of such conduct."

Several authorities are cited by the author as supporting this text. We are cited to no authority, nor have we found any, where equitable relief was denied when the facts showed that plaintiff was entitled thereto, where the suit was instituted within three years.

In the case at bar, quite a different state of facts is presented from that, in any case where the relief was denied. It is in evidence that, within about a month after the permit to allow these obstructions to be placed in the street had been obtained by appellant, appellee learned that they were being placed there, or had been placed there, and at once notified appellant that it must remove them. Having given this notice, it was but fair that he should give appellant a reasonable opportunity to comply with his request. He waited from the latter part of November until early in June, and having then

become convinced that it was not its purpose to remove them, he instituted this suit. The contention that he has delayed an unreasonably long time in seeking relief at the hands of a court of equity is not well taken. But, it may be urged, in response, that the obstruction which appellant sought to put in the street was but a renewal or a continuation of the obstructions which had theretofore been maintained by appellant's predecessor in title, B. F. Avery & Sons. The evidence, however, does not support such a claim. The platform which appellant placed there had the effect to completely obstruct the passage way for vehicles in the street, when cars were standing upon the switch, while the platforms which Avery & Sons used, do not seem to have had this effect. They were not so substantial or permanent in their nature and appear to have been in part portable, and there were times when the streets were not obstructed at all, while the business was being conducted by Avery & Sons. They used at times what they called a sand box. This was an obstruction on the sidewalk, but it was taken away and was not in use when appellant took possession of the property. The placing of large quantities of goods upon and in the street, either when they were being loaded into the cars or when they were unloaded from the cars, frequently while Avery & Sons conducted the business, obstructed the streets, but these were not permanent in their character, but were intermittent, and each obstruction by goods of this character constituted a separate and distinct offense, but not so with the obstructions which appellant placed there and which the court directed to be removed. It is undoubtedly true that if appellant was permitted to maintain these obstructions in the street, it would be enabled thereby to much more expeditiously handle its business and with decidedly less expense, but the rights of the parties here are not measured by such standard. Appellant is entitled to a reasonable use of the street, and when it confines itself to such use, neither appellee nor the public may complain, but, when it so uses the street as to entirely close it to the passage of vehicles and pedestrians as well, they are not only exceeding their own rights, but invading the rights of the general public and particularly of those, whose property lies adjacent thereto and whose pecuniary interests will be, and are,

materially affected thereby; and to this class, appellee belongs.

The judgment of the chancellor imposes no hardship upon appellant. But, on the contrary, it permitted both the overhead bridges, spanning the street and connecting its warehouses on either side, to remain for its use and convenience. It likewise permits the switch track to remain in the street, and it has a right to the reasonable use of the street, in the conduct of its business, and is only required, in exercising this use, to at all times refrain from closing it to the passage of vehicles and pedestrians.

Judgment affirmed.