## Stratton & Terstegge Company v. Meriwether.

(Decided September 30, 1913).

Appeal from Jefferson Circuit Court
(Chancery Branch, First Division).

1.  Streets—Right of Abutting Owner to Obstruct.—An abutting owner may in the conduct of his business or in the improvement of his property, temporarily obstruct a part of the adjacent street, if the obstruction does not unreasonably interfere with the right of the public to the use of the street.

2.  Streets—Obstruction by Abutter.—The obstruction of a street by
    an abutting owner must be temporary in its nature and such as is
    reasonably necessary for the transaction of business or the enjoy-
    ment of the premises, and the obstruction must also be reasonable
    with reference to the rights of the public. If an obstruction con-
    tinues for such a period as to amount to an unreasonable inter-
    ference with the public travel, it is unlawful and a nuisance. The
    question whether an obstruction is allowable or a nuisance is
    generally a question of fact to be determined by the facts of each
    particular case.

3.  Streets—Obstruction—Facts of This Case.—S. & T. owned large
    factory buildings on each side of a narrow street on which a rail-
    road track was laid so that cars loaded with freight for use in
    the factory might be hauled on the street to a point opposite the
    door of the factory and there unloaded. For the purpose of un-
    loading cars so placed, S. & T. put temporary supports in the
    street, and on these supports laid planks reaching from the factory
    door to the car door. These planks so placed completely ob-
    structed the street, and it would be so obstructed from periods of
    two to eight hours. Held that such an obstruction was unlawful
    and a nuisance, although the hands unloading the car were in-
    structed to remove the planks and afford free passageway to
    travelers when so requested.

4.  Judgment—Conclusiveness of.—A judgment of the lower court
    which has been affirmed by this court is conclusively binding
    upon the parties.

5.  Judgment—Construction of.—Judgments should be reasonably
    construed and enforced so as to carry out the spirit as well as
    the letter of the judgment.

GIBSON & CRAWFORD for appellant.

ELMER C. UNDERWOOD for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

The facts out of which this litigation arose are very
fully stated in Stratton & Terstegge Company v. Meri-
wether, 150 Ky., 363. The judgment of the lower court,
which was affirmed in the case referred to, provides
that Stratton & Terstegge Company "are also hereby
enjoined and restrained from in any manner using
Crop street so as to interfere at any time with the full
and free use of the carriage way of Crop street by the
public, both on foot and in vehicles, and are also en-
joined and restrained from so using either sidewalk of
Crop street as not to admit full and free passage of pe-
destrians at any and all times on either the one or the
other of said sidewalks—that is, at no time shall both

sidewalks be so obstructed at one and the same time; * * * it also appearing to the court that the railroad switch referred to in the pleading and in the evidence was laid under authority from the General Council of the city of Louisville, and it further appearing that the plaintiff does not object to the reasonable use of said switch, it is therefore, ordered that the defendant may continue to make a reasonable use of said switch, but defendant shall not so use said switch as to violate any of the preceeding clauses of this judgment."

After this judgment had been affirmed, the appellee, Meriwether, appeared in the lower court and filed an affidavit setting out that the Stratton & Terstegge Company was continually violating the injunction granted by the lower court "in that Stratton & Terstegge Company from time to time have blockaded the entire carriageway of Crop street and the entire south sidewalk of Crop street by placing a platform or bridge from the freight cars to the buildings of the Stratton & Terstegge Company on the south side of Crop street. * * * That said platform or bridge is constantly used by said Stratton & Terstegge Company in the manner above indicated for loading and unloading said freight cars, and unless compelled to desist from so using the street by this court, said Stratton & Terstegge Company will continue to make said unlawful use of said street."

Upon filing this affidavit, which was accompanied by a photograph showing the manner in which the street was closed to travel by the platform used in carrying goods from freight cars standing in the street to the factory of the Company, Meriwether moved the court to punish the company for contempt in violating the judgment forbidding it to close the street.

In response to the rule issued against it, the company said "It is true that at times, when unloading cars containing material from its factory on the south side of Crop alley, a temporary wooden horse has been placed on the alley south of the railroad tracks in order to allow boards to be placed from the cars to the factory to expedite the unloading or loading of cars placed on the switch; that when said horse and boards are so placed, there has always been some representatives of the defendant attending to the loading or unloading of the car, in charge of said boards, who would immediately remove same whenever any vehicle attempted to pass up or down Crop alley; that when said boards and wooden horse were

temporarily in that position, the sidewalk on the north side of Crop alley was open to pedestrians; that the boards and wooden horse so placed were no greater obstruction to Crop alley then a vehicle would be which any citizen might place alongside of the car for the purpose of loading or unloading same; that said boards were in position for a less space of time at any one time, and blocked the street for a less length of time than would vehicles unloading from said cars standing in Crop alley; that immediately upon said cars being loaded or unloaded, as the case might be, said wooden horse and said boards were immediately removed and the south side of Crop alley left entirely unobstructed.''

Upon hearing the case the court adjudged the response insufficient and imposed a nominal fine upon the company for its contempt in failing to obey the injunction, which required it to conform to the terms of the judgment, and in the course of the judgment imposing a fine the court said: ''It is further ordered by the court that the defendant shall not use or obstruct the street with the platform mentioned in plaintiff's motion.'' Of this judgment the company complains.

The evidence shows that when freight cars were placed on the track in Crop street for the purpose of being loaded or unloaded at the factory of the company abutting on the street, a wooden platform resting on supports would be extended from the door of the car to the door of the factory, on which platform the goods were moved to and from the car and the factory. It is also shown that when this platform was being used the street was completely closed to travel by vehicles, and one of the officers of the company during his examination said, ''Q. About how long on an average does it require to unload a car  A. That depends on the material in the car.  Q. Give us your best judgment as to what this average time is to unload one of those cars. A.  On an average it would take me from two to six hours; sometimes eight hours; sometimes I can spend ten hours.  Q.  Unless some one would ask you to remove the obstruction you would allow it to remain during the entire process of loading or unloading, would you not?  A.  Yes, sir; but as soon as a car is unloaded we remove the boards.''

This witness also testified that if any persons came along while the street was obstructed by the platform and wanted to get by, the men unloading or loading the

car, as the case might be, would at once remove the platform so as to allow passageway, and that to do this only took a minute or so, but that so far as he knew no request had been made to have the platform removed while a car was being loaded or unloaded for the purpose of permitting a traveler to pass through the street.

On this appeal the judgment of the chancellor, which was affirmed in the case referred to, is conclusively binding on the parties, although that judgment might, as suggested by counsel for appellant, impose such limitations upon the use of the street by appellant as to seriously interfere with its business.

In the judgment referred to the appellant was "enjoined and restrained from in any manner using Crop street so as to interfere at any time with the full and free use of the carriageway of Crop street by the public, both on foot and in vehicles," and was also enjoined and restrained from obstructing both sidewalks at the same time. The admitted facts in this record establish beyond question that the appellant disobeyed and violated the clause forbidding the obstruction at any time of the use of the carriageway, as it is idle to say that to frequently obstruct the full width of the carriageway of a street from two to eight hours at a time by heavy timbers loaded with heavy irons, is not more than a mere temporary obstruction. We do not of course understand the judgment to mean that placing occasionally for a few minutes a temporary obstruction in the street that might interfere with its use is unauthorized or that it would subject the appellant to punishment for violating the injunction. The judgment should be given a practical and reasonable interpretation and such a one as would carry out its purpose and intent. For example, no one would maintain that if in loading or unloading a wagon, or in turning a wagon around for the purpose of being loaded or unloaded, the street should be obstructed for a few minutes that this would violate the meaning of the judgment. But when the street is obstructed for hours at a time, this obstruction does constitute a palpable violation of the letter as well as the spirit of the judgment and really amounts to a confiscation or appropriation of this street by appellant for its own use and benefit to the exclusion of the rights of the public.

The judgment, when fairly and practically applied to existing conditions, is, we think, in harmony with the

general principles of law that control in cases like this, and so if we should adjudge the case independent of the judgment and according to these well understood principles, we would rule that the use being made of the street by appellant amounted to an unauthorized and unlawful obstruction of it. In Dillon on Municipal Corporations, 5th Edition, sections 1168 and 1169, the general rule applicable in cases like this is thus stated:

"We have shown that the primary purpose of a street is for passage and travel, and that unauthorized and illegal obstructions to its free use come within the legal notion of a nuisance. But it is not every obstruction, irrespective of its character or purpose, that is illegal, even although not sanctioned by any express legislative or municipal authority. On the contrary, the right of the public to the free and unobstrutced use of a street or way is subject to reasonable and necessary limitations and restrictions. The carriage and delivery of fuel, grain, goods, etc., are legitimate uses of a street, and may result in a temporary obstruction to the right of public transit. So the improvement of the street or public highway itself may occasion impediments to its uninterrupted use by the public. And so of the improvements of adjoining lots by digging cellars, by building, etc.; this may occasion a reasonable necessity for using a part of the street or sidewalk for the deposit of material. Temporary obstructions of this kind are not invasions of the public easement, but simply incidents to or limitations of it. They can be justified when, and only so long as they are, reasonably necessary. There need be no absolute necessity; it suffices that the necessity is a reasonable one. * * *

"The temporary obstruction of public travel for the purpose of loading and unloading vehicles in front of business premises is recognized as a necessary exception to the general rule that any obstruction of a street or encroachment thereon which interferes with public travel and transportation is a public nuisance. The owner or occupant of abutting premises is justified in making a reasonable use of the street for the purpose of conveying goods to or from his premises, and for this purpose he may place temporary erections or obstacles such as skids across the sidewalk. But the right of the abutter to use the street for these purposes is subject to necessary limitations and restrictions. The obstruction must be temporary in its nature and such as is

reasonably necessary for the transaction of business or the enjoyment of the premises. Mere necessity in the business of the abutter is not sufficient of itself to justify the obstruction. The obstruction must also be reasonable with reference to the rights of the public whose interests in the street may not be sacrificed or disregarded. The right to so obstruct the street or sidewalk must also be exercised with a due regard to the rights and safety of pedestrians and others lawfully using the streets. If the obstruction continues for such a period as to amount to an unreasonable interference with the public travel, it is unlawful and a nuisance. The question whether an obstruction in a street is necessary and reasonable is generally a question of fact to be determined by the court or jury from the evidence relating thereto.''

Under the rule thus announced, it is, we think, manifest that the use being made of this street by appellant was not temporary. It really amounted to a permanent obstruction, as no one would care to go through this street when he saw the whole of it obstructed by freight cars and a big platform loaded with heavy irons, although it may be true that appellant's employees would if requested remove the platform so as to admit passage. But the public who have the right to use a street are not required every time they want to use it to ask the permission of some abutting owner who has taken possession of it or to wait until he can take out of the way obstructions that completely blockade it. The temporary obstruction that the merchant and the business man and the abutting property owner may place in a street to enable them to receive and deliver goods and material is very different from the character of obstruction placed in this street by appellant.

There is also of course a marked distinction between the partial and the total occupation of a street by a merchant or business man or abutting owner. It might be permissible for this class of persons to use a part of the street for more than a mere temporary purpose if a sufficient part of the street was left open for public use. In other words, a person having the right to use a part of the street in the conduct of his business, as in delivering or receiving goods or material, might so use a part of it in such a manner as to amount to more than a temporary obstruction of it without infringing on the rights of the public, if a sufficient space was left open

to enable the public to use the street. But under no circumstances that we can conceive of has a business man or abutting owner the right to make such use of the whole street as will in effect permanently deprive the public of its use, if indeed it would be legitimate to purposely obstruct the whole of it for any appreciable length of time. In Callanan v. Gilman, 107 N. Y., 360, 1 Am. St. Rep., 831, a case much like this, the court said:

"The primary purpose of streets is the use by the public for travel and transportation, and the general rule is, that any obstruction of a street or encroachment thereon which interferes with such use is a public nuisance. But there are exceptions to the general rule born of necessity and justified by public convenience. An abutting owner engaged in building may temporarily encroach upon the street by the deposit of building materials. A tradesman may convey goods in the street to or from his adjoining store. A coach or omnibus may stop in the street to take up or set down passengers; and the use of a street for public travel may be temporarily interfered with in a variety of other ways without the creation of what in the law is deemed to be a nuisance. But all such interruptions and obstructions of streets must be justified by necessity. It is not sufficient, however, that the obstructions are necessary with reference to the business of him who erects and maintains them. They must also be reasonable with reference to the rights of the public who have interests in the streets which may not be sacrificed or disregarded. Whether an obstruction in the street is necessary and reasonable must generally be a question of fact to be determined upon the evidence relating thereto.   *   *   *

"Now, what are the facts of this case? Both the plaintiffs and the defendant were extensive retail and wholesale grocers, having stores near to each other on the south side of Vesey street in the city of New York; and a large portion of the plaintiff's customers, in order to reach their store, were obliged to pass upon the sidewalk in front of the defendant's store. Goods were taken to and from the defendant's store by means of trucks loaded in the street. The trucks were placed in the street adjoining the sidewalk, and then a bridge, made of two skids planked over so as to make a plankway three feet wide and fifteen feet long, with side pieces three and one-half inches high, was placed over the sidewalk with one end resting upon the stoop of the

defendant's store and the other end upon a wooden horse outside of the sidewalk near the truck to be loaded. This bridge was elevated above the sidewalk at the inner end about twelve inches, and at the outer end about twenty inches, thus entirely obstructing the sidewalk, and goods were conveyed over this bridge to and from the store. Persons wishing to pass upon the sidewalk in front of the store, when the bridge was in place, were obliged to step upon the stoop and go around that end of the bridge. The bridge was usually removed when not in use; but there was uncontradicted evidence that it was sometimes permitted to remain in position, when not in use, for ten or fifteen minutes, and that it sometimes remained in position when in use one hour, one hour and a half, and sometimes even two hours; and the court found that the bridge thus remained in position across the sidewalk from four to five hours each business day between the hours of nine o'clock a. m. and five p. m., and that it obstructed the sidewalk the greater part of every business day.

"Such an extensive and continuous use of the sidewalk cannot be justified. It was a practical appropriation, by the defendant, of the sidewalk in front of his store to his private use, in disregard of the public convenience. Even if, in some sense, such use was necessary to the convenient and profitable transaction of his business, and if the obstruction of the sidewalk was no more, and even less, than it would be by any other method of doing the business, these circumstances do not justify the obstruction. If the defendant cannot transact his extensive business at that place without thus encroaching upon, obstructing, and almost appropriating the sidewalk during the business hours of the day, he must either remove his business to some other place, or enlarge his premises so as to accommodate it. It was incumbent upon the defendant to show, not only that the use he made of the sidewalk was necessary in his business, but also that it was reasonable in reference to the public convenience. That it was unreasonable is too clear for dispute. He might use the bridge to load or unload a single truck; and this he could do at intervals during the day, at no time obstructing the street for any considerable length of time. But there is no authority, and no rule of law, which would warrant such an obstruction daily for hours, or even one hour continuously. The defendant was, therefore, guilty of a public nuisance."

Another similar case is John A. Tolman & Company v. City of Chicago, 240 Ill., 268, 24 L. R. A. (n. s.), 97, 16 Ann. Cases, 142, in which the same general principles were announced as may be found in Dillon and in the Callanan case, although the court on the facts found that the temporary use of the street by the Tolman Company in the manner stated in the opinion was not unlawful. It is said in these cases, and the truth of it is obvious, that the rights of the parties in all cases like this must be adjudged by the facts of each particular case. There is no disagreement in the authorities as to the principles of law applicable. The difference arises when it is undertaken to apply these principles to the facts. We have not, however, been referred to any case, nor have we been able to find one that would justify the appellant in the occupation of the street in question in the manner stated. To hold such use of a street lawful would be to ignore altogether the rights of the public and turn the street over to abutting owners for such use and occupation as the convenience of their business might seem to demand.

Upon the facts before us we have no doubt of the correctness of the judgment appealed from, and it is affirmed.